Good morning, Your Honors, and may it please the Court, Peter Afrasiabi on behalf of the petitioner Mercy Alezano-Hernandez. Your Honors, this Court should reverse for two specific and narrow reasons. The first is with respect to the Board of Immigration Appeals and the immigration judges' construction of what was the social group at issue. And the second issue I want to turn to after that is the issue of the Convention Against Torture and the erroneous conclusion that doesn't meet the substantial evidence standard, because it errs as a matter of law, that this credible record testimony and record did not establish sufficient basis for fear of future torture because of alleged general ineffectiveness at issue. Let me turn to the first issue, though, and that's the proposed social group. The root error here is that at trial, at page 184 of the record, and that's lines 12 to 14, counsel for petitioner below explained to the court what the social group was. And the petitioner explained that the social group at root is women in Guatemala. And if you look at that, there was a colloquy between immigration judge and counsel where the immigration judge asked, what do you mean about this stuff, you know, subjected to rape because of government control? And counsel said, the government of Guatemala can't protect their women. And that's what she said. They can't protect their women. Counsel, is that right or to say can't protect their women from rape? Can't protect their women from rape. True. From rape. Absolutely, Your Honor. But my point is, at the time the immigration judge issued her ruling, she went back to the filing for March of 2017, the written submission, and relied on that. She didn't look at the colloquy that had happened to understand that the context of what was being said is that this government can't protect women, period. And so the social group is all women. It's not women who are being raped because the government is trying to control them or anything like that. And there was no record evidence of that. That was never the theory tried. The only theory tried and the only record evidence given was that women, period, get raped in this failed state and they don't have any recourse. Now, part of the problem, I think, when you unpackage this in terms of what happened is the immigration judge just said at some point earlier in the record, give me a brief on your proposed social group and a brief is filed. And it's filled with facts and legal argument about the horrible misfortune that the petitioner suffered and arguing that she was raped and harmed. But it's an it's an overindulgent interpretation, to put it mildly, we would submit to say that counsel was actually arguing that her client was raped on account of being a woman who's raped. I mean, it's circular and the basic syllogism under refugee law is persecution on account of social group. And the idea that in defining the social group as all women in Guatemala, she was through the back door bringing in rape, which is a matter of law you can't do. And that's what really happened is a flawed reading of the record. And the problem, the root problem procedurally with what happened is that when a brief was asked for, no one said like we do in our patent cases, you know, our copyright cases be very specific about your pleading counsel. If you allege something that doesn't state a claim as a matter of law, you'll get a chance to amend and we'll air it out. None of that happened. She just filed a brief. She modified it on the record. And then months later, the immigration judge simply says, gotcha. You defined it to include rape. You can't do that as a matter of law. You lose instead of actually having what we always do in our normal federal courts. Right. When we're fighting about property rights, we didn't have here a discussion about counsel. That is that really what you're saying? That doesn't state a claim as a matter of law. None of that happened. And that violates the most basic tenet in this whole operating system that the United States Supreme Court has demanded. In the seminal case of Bridges v. Wixon, 1945, the Supreme Court said we must employ meticulous care. And this court has cited that the Padilla-Augustine case written by Judge Fernandez, 21 F. 3rd, 970 is the site, I believe. He cited it and said we have to have procedural fairness in the immigration system in terms of clarity about what's going on. Counsel, who, as I understand it, the attorney for your client, I assume it must have been a different attorney, actually put forward this PSG. The one that said women in Guatemala are subjected to rape as a method of government control. To hear you this morning, you'd think that the I.J. sprung this PSG on her, but it wasn't. This was the PSG that the I.J. actually presented. I mean, that she presented to the I.J., and the I.J. actually requested the counsel to explain it. So, I mean, that's one challenge with what you're saying. You're making it sound like the government or somebody imposed this PSG. It was her PSG, right? Like, she's the one that presented it to the I.J. She did, Your Honor. But she didn't, when she presented it, it was a brief making her argument. And no one told her that rape doesn't count. I mean, if we were arguing about some other case, you don't state a claim. So, then why did she make the argument? I mean, she was given the opportunity to brief it. That's, I mean, that counts for something. When we ask for a brief, that means we want to be educated. Correct, Your Honor. And if someone advances a flawed legal theory, we give them the right to amend, and we have a discourse. There was no discourse until the immigration judge issued her opinion. And in her opinion, she ignored the discourse that happened at page 24. There was a discourse. I mean, you were talking about this colloquy that happened. And in that colloquy, I don't think, it's not clear to me that the counsel was trying to even amend the PSG in that colloquy. But if counsel was trying, if there's anything in that colloquy that would tend towards trying to amend, I don't see anything where counsel would be taking out the defining it by rape. Maybe the subject to government control, a method of government control. Because that's what the I.J. was saying. What do you mean by that? But her counsel kept on referring to it as rape. It was all about rape. And so I don't, she presented it, had the opportunity to change it, and still continue to define it by rape. It seemed like during the colloquy. And I think that's where the error is. She's talking about the harm that befell the person. And so if the syllogism in immigration law is that a refugee is a person who suffers persecution on account of a protected group, if it was really the case that she's saying I'm a woman who was raped because I'm a woman who's raped, it doesn't make any sense to even interpret what counsel was saying as bringing in through the back door the rape. That's the point. It seems to me, counsel, your argument is it's not legal to, if you have a circular definition, that's not allowed. And therefore, she couldn't have meant that. But, I mean, that's the reason we have this rule is to prevent this. And people do regularly have circular PSGs. And they get and they lose because of that. But it can't be the fact that just the fact that she had a circular PSG means she couldn't have meant to have a circular PSG. That can't be right. But there was nothing in the record to sustain the idea that the theory being tried is that she was pursuing anything other than women in Guatemala are subjected to rape. And there's no recourse for it. That's the entire theory of the persecution and the harm and the social group. It's women, period. And the undisputed credible testimony of Mercy, the letter from her parents at 310, the country condition reports all support that theory. And so I guess the second error in this is that the BIA then concluded by looking at only at what was said in the PSG in March of 2017, they didn't actually address what was said on the record and how that could have modified what was going on. Instead, they cited to the waiver rule. And they relied on WYC and HOB. In that case, in this court's opinion in Honcharov, are both inapposite. Because in those cases, these waiver doctrines are applied where there's a shifting social group that is substantially different between the IJ and the BIA level. And in each of them, there are massive additions made to the social group that require different factual findings that didn't exist. And so that's a legitimate application of waiver. And you look at the social groups in Honcharov and WYC, HOB before the IJ and the BIA, and you can see massive additions being made. And so it was a legitimate waiver application. But here, there is no addition being made. If indeed it's the case that the IJ thought that this was only about a method of government control or a government that doesn't protect women, that versus women, period, is not a substantial difference that can justify application of that waiver. Because the waiver rule requires a substantial difference, not just a difference in vernacular or verbiage, a substantial difference. And so both of those cases compel the fact that the waiver application was wrong. And so for that reason, the matter should be remanded so that the IJ and the BIA can consider the social group as amended on the record of 184 properly, which wasn't done in the written record. The ruling they issued wasn't based on that. It was based on an earlier filing. Finally, with my time running low, I'd like to say the general effectiveness theory of CAT is unsupported given the credible record testimony from Mercy, her parents, the country condition reports. And on torture, there's a massively important fact that was not noted below by the BIA. And that is at page 157 of the record, Mercy testified credibly that it's not just Mercy who was told, I'm yours, you'll be mine. A rapist told her her children will be his, too. And she has two United States citizen daughters now in America. The idea that that is not torture, to subject Mercy to the rape, and then the psychological threat that her U.S.-born children are now going to be sent back and raped by the man, too, that is a basis for a convention against torture claim. And the BIA's resort to it's just a record of general effectiveness is not supported by this record. I mean, there's an overwhelming wall of factual evidence in this record that shows this is beyond general ineffectiveness. This is a failed state in terms of protecting women. And the government had every opportunity to bring in an expert or some contrary evidence to make the point that, no, they really are trying to do their best. But it didn't do that. And so I don't think even within the substantial evidence standard of review, this court can sustain that conclusion. And I see I'm over my time. I have a question. My question is, has the BIA or our court ever analyzed the question of whether women in Guatemala can be a particular social group? Implicitly, yes. In the Perdomo case from this court, it was advanced that a social group of only women. And this court said it could be. It could not be. We don't know. We're sending it back. And that's consistent with another unpublished case from this court. I believe it's the Chilean case. There are BIA opinions also, and they're cited in our briefs that indicate women, period, can be a social group in particular circumstances. We have it in the female genital mutilation cases already. But Perdomo is a very important case because this court said that could be a social group. So everyone has been well aware of the fact that women in Guatemala can literally be a social group. It's on the table for discussion. So it's not as if the idea before the IJ or the BIA that women as a social group was being advanced, and that's just fantastically silly. It can't be the case. The law has already said they could be a social group. And that's why I think this court has to remand it, has to require the IJ in the first instance to consider the social group as amended, and to be told, we submit, that it's women in Guatemala, period, and analyze it in the first instance, create that record, and then we can bring that up if necessary. All right. Thank you, counsel. Thank you, Your Honor. Mr. Jolly? Yes, Your Honor. May it please the court, my name is Lance Jolly. I represent the respondent, the United States Attorney General. A petitioner who was represented by counsel before the Immigration Center, failed to clearly delineate the social group she now claims as the basis of her asylum and withholding of removal claim. Substantial evidence also supports agencies' denial of protection under the Convention Against Torture on acquiescence grounds. As petitioner's claim is based on membership in a particular social group, she had the burden to clearly indicate the exact delineation of any particular social group to which she claims she now belongs. And as discussed earlier, in her written statement sending forth her claim group, petitioner asserted that she is a member of a group of women subjected to rape as a method of government control. And before the immigration judge, the immigration judge followed up regarding the statement. And petitioner affirmed her claim group, explaining that the government gives the control to men by not protecting women. Yet she has been objected to the proposed group of women who have been raped. Petitioner only explained what was meant by government control. She did not abandon the rape aspect of the group. She never stepped up in a straightforward manner to the immigration judge to simply state the group of women in Guatemala. As such, the board recently deemed women in Guatemala as waived on appeal. As to protection against torture, despite the general... Counselor, what does women subjected to rape as a method of government control mean? Well, you would have to ask the petitioner that. I'm wondering, what does it mean in the context of the IJ's discussion of it? I'm trying to understand what she was really analyzing here, because it's kind of ludicrous to say that there's a social group of... The government of Guatemala is trying to control its women by raping them? I mean, is that what this is saying? I think that's probably why the immigration judge asked, what do you mean by government control? Because that does seem like a far-fetched idea. And the petitioner was given the chance to explain, and explain that government gives the control to men by not protecting women. So it's more about, when she explained it, she said it's that the government do not protect their women. That's what she means. And it's at least plausible, she was trying to say, even though her attorney was terrible. And I recognize we've had a selection of attorneys, the present attorney is not the attorney who submitted these briefs. She was saying it's because the government does not protect their women. The government tries to control their women by raping them. It's more that the government does not protect their women from rape and all sorts of other things. I'm sorry, we're having a lapse in time. I'll stop talking so you can answer. The lapse is probably on my end. Anyway, the petitioner, in his opening statements, seems to be raising an ineffective assertion that counsel was not exhausted below. But as to your point that maybe she was saying that, after the DHS objected to women subjected to rape, and omitted discussion of government control, it seemed that it was understood, at least because there was no objection to that characterization, that was the proposed group as early contours of the group, as I raised in the answering brief. Women who are subjected to rape and women are distinct groups. Although the backfilling by counsel is admirable, the group he now claims was not raised to the immigration judge. So, Mr. Jolly, do you agree or disagree that legally there could be a PSG of women in Guatemala? There's a Chenery problem in answering that question. I'm sorry, what? At Chenery, I'm not allowed to really go off on things that weren't addressed by the board. As the board did not consider, or that IJ did not consider the group women in Guatemala, then, you know, there's nothing to be said about that except that it may be a group, but the agency would have to be the first crack at it. Perhaps you know because of your experience in this area, but do you know if somewhere percolating up are any decisions from the BIA talking about women in Guatemala or women in Mexico? I mean, we've been encountering this issue and demanding for the BIA to analyze it in the first instance for a while. Are you aware of any, just based on your knowledge of the BIA? Generally, they don't keep us too much in the loop as to the cases on appeal to the board. Occasionally, the board sends out amicus invitations, but I'm not too familiar on this. But the topic is we know the concern of the court, and when the appropriate one is right for the court's review, then certainly represent the respondent in that matter. But at present, I'm not aware of any women in Guatemala findings by the board. If there's no other questions on the CFC issue, I'd like to proceed with the CAC. Despite general ineffectiveness of the Guatemalan government in preventing Elizondo Hernandez's rape, such an effectiveness does not raise the inference that public officials acquiesce to her torture or would likely acquiesce to any future torture. As in Garcia Milian, the government has taken steps to address the serious problem of rape. There's heavy penalties for rape. They've created a special prosecutor and a special police unit. Essentially, they are not willfully blind to the issue. And as there's no individualized evidence that would tie the feared rapist to the government or any testimony that the police witnessed or were aware of Luis and the problems he caused and were dismissive of them, the record simply does not compel the conclusion that the government would acquiesce to a future torture. Unless the court has any questions, I conclude that the court should deny this petition for review. All right. Thank you, counsel. Mr. Aperciada, I'm sorry. Tell me how to pronounce your name. Aperciada, Your Honor. Okay. I'll give you a minute to respond. Thank you, Your Honor. With respect to the last point first, the assertion that there's no individualized evidence, not so on this record. At page 154, Mercy testified credibly, the police do nothing to protect women. That testimony is buttressed by her parents' letter that said, this is a violent country where nothing is done to protect women. And the country condition reports don't show generalized ineffectiveness. They show that 5% of the reported sexual rapes and assaults led to prosecutions and convictions. That's a 95% failure rate. That is not a country that's getting close, trying, having a few problems. That is effectively a failed state when you've got numbers like that. And so the Convention Against Torture claim is made out, we would submit. I would also submit that here's the big picture issue that I think is very, very important. When counsel is talking about rape, they're talking about the persecution, which is part of the prima facie cause of action. What was the persecution? Was it threats, economic persecution, rape, beatings, whatnot? I think that's the proper way to interpret the word. And what wasn't done, which is so important because we demanded in our regular courts, if I advance an invalid copyright theory and I plead an idea, and you judges tell me literally that that doesn't state a claim, we have a colloquy, and I'm told idea's not enough, try again, counsel. And if leave to amend is not given, this court reverses instantly. I mean, literally, we've had those cases, right? And so what happened here is that process didn't happen. If there was real confusion about the use of this word rape, and are you talking about the persecution, or are you bringing it in the back door, there could have been a discussion. And we demand those discussions in our regular courts. And what we're saying here is that this is the life and liberty of a human being on the law. And that should have been subjected to a question and a discussion. Counsel, this is the argument that I'm struggling with. You're basically saying we should have had a discussion, but there was a discussion. I could imagine a case where there was no discussion, that the attorney just presented the PSG and the IJ went with it. But the IJ actually asked about it, and counsel answered, this is what I mean. Because the police are not effective in controlling or investigating or prosecuting rape, they're essentially giving control to the men and allowing women to be raped. So there was a discussion. It seemed like counsel doubled down on defining it as rape. So it seems like you're asking for something even more than that. I'm not asking, Your Honor. The question that wasn't asked, which is the million-dollar question, is are you, counsel, including the word rape in there, or are you just talking about the harm that is part of your cause of action? Are you talking about the noun, the social group, or the verb, the harm? Who has the burden to precisely define the PSG? I mean, it's a black-letter law that your client has the burden, not the IJ. The law is black-letter, Your Honor, that the IJ has to ensure that they understand what is going on. And so if the law demands a meticulous process before a life or liberty case is thrown out, then that meticulous process should have that colloquy. So is your position that the IJ had to come, had to actually say to counsel, say, well, I think the PSG here is impermissibly circular. So I've already talked to you about it. I've already asked you how you define it. But how you define it is wrong. I mean, that can't be right because this court has actually upheld BIA decisions that said the PSG was impermissibly circular, which it would not have done if you have to actually give them a chance to redefine it. I mean, more than give them a chance. Tell them it's circular and tell them you can't define it this way. It seems to be your position. I think that should have happened here, and that issue wasn't raised in those prior cases. If a judge hears a legal theory that's infirm, they can tell counsel, you're advancing an infirm legal theory. Instead, it's saved until months later, and it's put in a written submission, which didn't cite to page 184. Page 184, she said, country conditions the state that the government do not protect their women. I mean, that's what she's talking about, their women. She didn't say some women, such as a category of women who are raped. She said they do not protect their women. Their women is all women. I mean, that's what it is. And so it was obvious from that colloquy at page 184, lines 12 to 14, that the social group really wasn't trying to include rape as an element of the social group. Rape is the persecution that befalls the social group of their women, the women of Guatemala. All right. Thank you, both counsel, for an excellent argument. Alessandra Hernandez v. Barr will be submitted. Thank you, Your Honor. We will take up Stoner v. County of Riverside.
judges: Wardlaw, Hillman, Vandyke